Timothy L. Woznick [WY Bar # 6-3949]
CROWLEY FLECK PLLP
237 Storey Blvd., Ste. 110
Cheyenne, WY 82009
Telephone: (307) 426-4100
Facsimile: (307) 426-4099
twoznick@crowleyfleck.com

Joseph V. Norvell
jnorvell@norvellip.com
(Pro Hac Vice to be submitted)
Tom M. Monagan
tmonagan@norvellip.com
(Pro Hac Vice to be submitted)
Christian S. Morgan
cmorgan@norvellip.com
(Pro Hac Vice to be submitted)
NORVELL IP LLC
1776 Ash Street
Northfield, Illinois 60093
Telephone: (888) 315-0732
Facsimile: (312) 268-5063
courts@norvellip.com

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2019 OCT 24  PM  ⁼ 00

MARGARET BOTKINS
CHEYENNE

*Attorneys for Virgin Enterprises Limited*

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| Virgin Enterprises Limited,<br><br>Plaintiff,<br><br>v.<br><br>Virginic LLC, Virginic Labs LLC, Virginic PL Sp. z o.o., Paramount Labs 77 LLC, and Berenika Maciejewicz,<br><br>Defendants. | Civil Action No. 19-CV-220-F<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, DILUTION, UNFAIR COMPETITION, RELATED STATE AND COMMON LAW CAUSES OF ACTION, AND DOMESTICATION OF UK JUDGMENT**<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiff Virgin Enterprises Limited ("VEL") brings this action against Defendants

Virginic LLC, Virginic Labs LLC, Virginic PL Sp. z o.o., Paramount Labs 77 LLC, and Berenika

Maciejewicz (collectively, the "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1), and Wyoming common law; unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), and Wyoming common law; and trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c), and WY Stat. § 40–1–115 (2017).

2.      This action also seeks recognition and enforcement of a United Kingdom High Court of Justice money judgment obtained by VEL against Defendant Virginic LLC.

3.      Defendant Berenika Maciejewicz is a self-described "serial entrepreneur" and the organizer of the Virginic Defendants (Virginic LLC; Virginic Labs LLC, and Virginic PL Sp. z o.o.), as well as defendant Paramount Labs 77 LLC ("Paramount"). The Virginic Defendants and Paramount are in the business of producing cosmetics and personal care products and selling those products globally, including in the United States and Europe.

4.      This action results from Defendants' unauthorized and willful misappropriation of VEL's famous and distinctive VIRGIN trademarks for their cosmetics and personal care products, thus causing harm to VEL and to individuals in the State of Wyoming and this District.

5.      The infringement is willful in the United States, in part, because Virginic LLC already lost a similar challenge abroad. Specifically, on March 19, 2019, the High Court of Justice in London,  United Kingdom (the "UK High Court") denied Virginic LLC's application to register the VIRGINIC trademark in the UK, finding it was likely to be confused with VEL's famous VIRGIN marks. Following this decision (and two failed applications made by Virginic LLC, the first to vary the initial UK High Court Order and the second for permission to appeal), the UK High Court made two costs awards in favor of VEL. As a result, Virginic LLC now owes VEL

2

£35,000, plus interest (the "UK Judgment"). VEL has attempted to collect the UK Judgment, which is final and unappealable, but Virginic LLC has refused to comply with the UK High Court Order or satisfy the UK Judgment.

6.      Through this action, VEL now seeks injunctive relief and damages arising from Defendants' ongoing infringement of the VIRGIN trademark in the United States, as well as recognition, enforcement and immediate payment of the UK Judgment.

## THE PARTIES

7.      Plaintiff Virgin Enterprises Limited is a company organized under the laws of England and Wales, with its principal place of business at The Battleship Building, 179 Harrow Road, London, UK W2 6NB ("Plaintiff" or "VEL," or, collectively with its licensees and affiliates, the "Virgin Group"). VEL is the owner, a user, and licensor of a portfolio of over 3,000 trademark registrations and applications incorporating the VIRGIN trademark in over 150 countries worldwide, including over 125 applications and registrations in the United States. The U.S. registrations and applications, together with VEL's extensive U.S. common law rights in its VIRGIN and VIRGIN-formative word and design marks, all referenced throughout this pleading, are hereinafter referred to as the "VIRGIN Mark(s)."

8.      Defendant Berenika Maciejewicz is a citizen of Poland who resides in Poland and California, and is the founder and the sole owner, member and manager of Defendants Virginic LLC, Paramount Labs 77 LLC, Virginic PL Sp. z o.o., and Virginic Labs LLC (collectively, the "Corporate Defendants"). Maciejewicz, by and through the Corporate Defendants, without authority, consent, right or license, and in violation of VEL's registered trademark rights, has and continues to advertise, market, sell, offer for sale, and/or manufacture cosmetics and other personal

care products under the mark VIRGINIC, which fully incorporates and is confusingly similar to VEL's famous and registered VIRGIN Marks and name.

9.      Defendant Virginic LLC is a Wyoming company with its registered place of business at 30 N. Gould St., Suite 6536, Sheridan, WY 82801, which is the address for the business registration and mail forwarding service called Wyoming Mail Forwarding, LLC. Maciejewicz is the founder and member/manager of Virginic LLC, and Virginic LLC is an alter ego for Maciejewicz. Defendant Maciejewicz, by and through Virginic LLC and the other Corporate Defendants, has and continues to advertise, market, sell, offer for sale, and/or manufacture cosmetics and other personal care products under the mark VIRGINIC, including at the website www.virginic.com and at www.amazon.com. The Defendants also provide certification services for the same goods under the same mark (*see* www.certifiedvirginic.org) and related promotional services at www.virginic.club.

10.     Virginic Labs LLC ("Virginic Labs") is a Wyoming company also with its registered place of business at 30 N. Gould St., Suite 6669, Sheridan, WY 82801, which is the address for the business registration and mail forwarding service called Wyoming Mail Forwarding, LLC. Defendant Maciejewicz is the founder and member/manager of Virginic Labs, and Virginic Labs is an alter ego for Maciejewicz. Defendant Maciejewicz, by and through Virginic Labs and the other Corporate Defendants, has and continues to advertise, market, sell, offer for sale, and/or manufacture cosmetics and other personal care products under the mark VIRGINIC, and provide certification services and related promotional services for the same goods under the same mark.

11.     Virginic PL Sp. z o.o. ("Virginic Poland") is a Polish company with a registered place of business at ul. Działkowa No. 3, Kierszek, PL 05-500. Defendant Maciejewicz is an

owner/manager and/or chairperson of Virginic Poland. Defendant Maciejewicz, by and through Virginic Poland and the other Corporate Defendants, has and continues to advertise, market, sell, offer for sale, and/or manufacture cosmetics and other personal care products under the mark VIRGINIC, and provide certification services and related promotional services for the same goods under the same mark.

12.     Paramount Labs 77 LLC ("Paramount") is a Wyoming company also with its registered place of business at 30 N. Gould St., Suite 3666, Sheridan, WY 82801, which is the address for the business registration and mail forwarding service called Wyoming Mail Forwarding, LLC. Defendant Maciejewicz is the founder and member/manager of Paramount, and Paramount is an alter ego for Maciejewicz and/or a sham successor in interest to Virginic LLC created solely to hide assets from the UK Judgment and continue the acts of infringement by Defendants in the US and globally. Paramount facilitates, supervises, oversees or otherwise is involved in the manufacture and/or import of the cosmetics and other personal care products offered and sold under the VIRGINIC brand.

### JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over VEL's federal claims pursuant to the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338(a) and (b). This Court has supplemental jurisdiction over VEL's state law claims pursuant to 28 U.S.C. § 1367 because these claims are joined with substantial and related claims under the trademark laws of the United States, and they are so related to claims in this action within such original jurisdiction that they form part of the same case or controversy or derive from a common nucleus of operative facts. This Court also has diversity jurisdiction over VEL's claims pursuant to 28. U.S.C. § 1332 because there is complete diversity and the amount in controversy in the aggregate is in excess of $75,000,

exclusive of interest and costs.

14.     This Court has personal jurisdiction over Defendant Maciejewicz, who, on information and belief, has and continues to solicit, transact, and do business in the State of Wyoming and this District, has and continues to wrongfully cause injury to VEL in the State of Wyoming and this District, and derives substantial revenue from interstate commerce. In particular, without limitation, Maciejewicz has registered and maintained multiple businesses in the State of Wyoming through which she continues to promote, advertise, market, sell, and/or manufacture products under the name VIRGINIC to Wyomingites and within the State of Wyoming and this District, including through the websites www.virginic.com, www.certifiedvirginic.org, and www.virginic.club. Therefore, Defendant Maciejewicz can reasonably anticipate being hailed into court in Wyoming.

15.     In addition, Defendant Maciejewicz is personally liable to VEL in light of her direct operational and financial control over the Corporate Defendants, all of which are alter egos of Maciejewicz. On information and belief, at all times Defendant Maciejewicz was the sole member and manager controlling all of the Corporate Defendants. On information and belief, Maciejewicz failed to follow corporate formalities; failed to ensure that the companies were properly capitalized; and also failed to properly separate her own personal assets from those of the companies. These are all factors considered for imposing personal liability on a member or manager of a limited liability company pursuant to WY Stat. § 17–29–304. For example, on July 1, 2019, Virginic LLC affirmatively represented to VEL's UK counsel that it is "unable to pay £35,475.89 as the company has no assets, no savings and no credit or borrowing abilities […]." Moreover, as detailed further below, Paramount is a sham successor in interest to Virginic LLC created solely to hide assets from the UK Judgment and continue the acts of infringement by

6

Maciejewicz in the US and globally. As such, a piercing of the corporate veil and a finding that Maciejewicz is personally liable to VEL is warranted.

16.     This Court has personal jurisdiction over Virginic Poland because it is the alter ego of Maciejewicz, and as described above, this Court has personal jurisdiction over Maciejewicz. Moreover, on information and belief, Virginic Poland, together with Maciejewicz and the other Corporate Defendants, has and continues to solicit, transact, and do business in the State of Wyoming and this District, has and continues to wrongfully cause injury to VEL in the State of Wyoming and this District, and derives substantial revenue from interstate commerce.

17.     This Court has personal jurisdiction over Virginic LLC, Virginic Labs and Paramount because they are incorporated in the State of Wyoming and have principal places of business in this state.

18.     The Court's exercise of personal jurisdiction over the Defendants is also proper pursuant to WY Stat. § 5–1–107 (2017) and is consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

19.     Venue is proper in the District of Wyoming pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District, Defendants have committed tortious acts of infringement in this District, have engaged in activities that subject them to jurisdiction in this Court, and the Corporate Defendants are located and incorporated in this District. Finally, because Defendants are subject to personal jurisdiction in this District, venue is proper in this District.

## VEL'S HISTORY AND ITS FAMOUS VIRGIN MARKS

20.     The Virgin Group was founded in 1970 as a mail order record retailer by British entrepreneur Sir Richard Branson. As used today by Virgin, its licensees, and affiliates, the

7

VIRGIN Mark is one of the most highly-recognized trademarks in the United States and throughout the world. Unlike many other famous brands that are limited to a particular industry, the reputation of the Virgin Group is not limited to any particular area or activity. Indeed, the Virgin Group is a dynamic conglomerate of companies and business units that actively develop new products and services with an ever-growing range of branded goods and services, ranging from spa and hotel services to consumer retail store services, airline transportation, financial services, mobile telephony, space travel, entertainment, and restaurant and bar services, to name a few. Substantial goodwill and national and international reputation has accrued to the VIRGIN Mark as a result of continuous sales, promotion, and advertising of products and services bearing the VIRGIN Mark over many years.

21.     Commencing at a time long prior to Defendants' adoption and use of the mark VIRGINIC, the Virgin Group has operated numerous United States and worldwide businesses under the trade name, trademark, and service mark VIRGIN. A description of the Virgin Group's operations appears at the Internet website associated with the domain name www.virgin.com. Virgin Group companies employ tens of thousands of people in 35 countries, serve millions of customers worldwide, have 96% brand recognition in the United States, and have global revenues of several billion U.S. dollars.

22.     Commencing at a time long prior to Defendants' adoption and use of the mark VIRGINIC, VEL used the VIRGIN Marks on and in association with the retail sale and distribution of a broad range of goods and services, including, but not limited to, cosmetics, spa and hospitality services, restaurant services, environmental and health-related services, airline and travel-related services, apparel, toys, books, bags, records, CDs, videos, consumer electronics, online information, and entertainment services, among other goods and services.

23.     As a result of its long-standing and continuous nationwide and widespread use, VEL owns extensive common law rights in the VIRGIN Marks in connection with a wide variety of goods and services. Examples of the use of the VIRGIN Marks by VEL and its licensees follow below.

24.     Virgin's licensee, Virgin Atlantic Airways Ltd. ("VAA"), sells various skin care products and cosmetics through the Virgin Atlantic Retail Therapy Shop and has offered spa services, including essential oil treatments and massages, at the Virgin Atlantic Clubhouse in New York since at least as early as 2012. A description of VAA's operations appears at the website associated with the domain name www.virginatlantic.com. VAA's skin care products and cosmetics offerings appear at https://retailtherapyshopping.com, and a menu of VAA's offerings at Virgin Atlantic Clubhouse in New York can be found at https://www.virginatlantic.com/us/en/flying-club/miles/spend-miles/our-clubhouse-spas.html.  In addition, VAA provides in-flight retail services to passengers to and from the United States, including retail sales of cosmetics and other personal care products.

25.     Virgin's licensee, Virgin Hotels ("VH"), has offered spa services in U.S. commerce under the VIRGIN Marks and has offered VIRGIN-branded vanity kits in its Chicago Hotel since at least as early as January 2015. Virgin Hotels has locations in Chicago and San Francisco, a Dallas location to open in December 2019, and additional planned locations in Nashville, New York, Las Vegas, Silicon Valley, New Orleans, Washington, D.C., and Palm Springs. A description of VH's operations appears at the website associated with the domain name www.virginhotels.com.

26.     Virgin's licensee, Virgin Voyages (formerly Virgin Cruises) ("VV"), established in December 2014, is a cruise line that will offer a variety of cruise ship services, together with

related spa services. A brief description of VV's future operations appears at the website associated with the domain name www.virginvoyages.com.

27.     Virgin's licensee, Virgin Limited Edition ("VLE"), is Sir Richard Branson's collection of retreats and luxury hotels under the portfolio of Virgin Hotels Group Limited, which also offer related spa services. A description of VLE's operations appears at the website associated with the domain name www.virginlimitededition.com.

28.     Virgin's licensee, Virgin Australia International ("VAU") has provided VIRGIN-branded air travel and related services in U.S. commerce continuously since February 2009. A description of VAU operations appears at the website associated with the domain name www.virginaustralia.com. VAU operates commercial aircraft providing departures to and from Atlanta, Austin, Baltimore, Boston, Chicago, Cincinnati, Colorado Springs, Dallas, Denver, Detroit, Fort Lauderdale, Honolulu, Houston, Indianapolis, Kona, Las Vegas, Los Angeles, Memphis, Miami, New Orleans, New York, Orlando, Philadelphia, Phoenix, Salt Lake City, San Francisco, San Jose, Tampa, and Washington D.C. VAU provides in-flight retail services to passengers to and from the United States, including retail sales of cosmetics and other personal care products.

29.     Virgin's licensee, Virgin Active, launched in 1998 and currently operates 233 fitness and health clubs worldwide that service more than 1.4 million members, including in the United Kingdom, Italy, Namibia, South Africa, Botswana, Thailand, Australia, and Singapore, some of which also provide spa services. Virgin Active is preparing to offer similar health club and spa services in the U.S. A description of Virgin Active's operations appears at the website associated with the domain name www.virginactive.com.

30.     VEL's operations extend worldwide. Customers purchase goods and services

identified by the VIRGIN Marks every day throughout the United States, including in Wyoming.

31.     Over the years, the VIRGIN Marks, including the term VIRGIN by itself and the multitude of VIRGIN-formative marks used by Virgin, have been so extensively used and advertised together that the VIRGIN family name is recognized by consumers as an identifying trademark or service mark in and of itself when it appears in a composite. As a result, the VIRGIN Marks constitute an easily recognizable family of marks that identify Virgin as the source of the goods and services provided.

32.     In addition to its strong common law rights in the VIRGIN Marks, VEL is the owner, user, and licensor of a portfolio of over 3,000 trademark and service mark registrations and applications incorporating the VIRGIN Mark in more than 150 countries worldwide. In the United States, VEL owns more than 125 U.S. trademark registrations and applications that include VIRGIN as the dominant element of the mark. These registrations and applications cover a wide range of products and services, including, but not limited to, spa and body care, cosmetics, retail store services, and promotional services, among many other goods and services. A representative sample of VEL's U.S. registrations relating to personal care and spa-related services, all of which are legally and validly registered on the Principal Register of the United States Patent and Trademark Office ("USPTO"), is listed below:

    1)    U.S. Registration No. 3,427,241 for VIRGIN for "Operation of leisure centers, namely, providing cosmetic and body care services," "organizing sporting and cultural activities and events; operation of leisure centers, namely, providing library facilities;"

    2)    U.S. Registration No. 3,174,388 for VIRGIN for "Soaps; shampoos; non-medicated toilet preparations, namely, soaps, shampoos, lotions, and moisturizers; antiperspirants; deodorants for use on the person; cosmetics, namely, foundation creams and lotions; non-medicated preparations for the care of the skin, hands, scalp and body, namely, moisturizers, lotions, creams, soaps, gels; hair care preparations, namely, shampoos; non-medicated skin cleansing

preparations, namely, cleansers, lotions, creams, soaps; creams and lotions for the skin;"

3)    U.S. Registration No. 4,220,791 for VIRGIN (stylized) for "Provision of exercise facilities; organization, operation and supervision of incentivized fitness programs and information advisory services relating to aforesaid services," and "operation of leisure centers, namely, providing cosmetic and body care services; beauty salons; Turkish bath services; hairdressing, manicure and pedicure services; consultancy in the field of beauty, body and skincare, make up and dress; massage; physical therapy; sun tanning salons; provision of sauna facilities; aromatherapy services; reflexology services; medical services, namely, chiropody services; health assessments and health care risk assessments, namely, providing a heart-rate based overview of their own metabolism in order to assist in reaching weight loss, sports performance, health, fitness, and wellness related goals; health spa services in the nature of providing steam room facilities; organization, operation and supervision of incentivized health programs and information advisory services relating to all aforesaid services," and "lifestyle counseling and consultancy;"

4)    U.S. Registration No. 4,325,986 for VIRGIN for, among other things, "Online retail store services featuring apparel, accessories, fragrances, watches, jewelry, sunglasses, electronics, cases for electronic products, gift cards, toys, model airplanes, liquor, cosmetics, luggage, bags, pet products, furniture, cookware, coffee makers, golf equipment, wall art, key rings," and "creation, management and administration of investment funds, venture capital funds and private equity funds; charitable fundraising; credit card services;"

5)    U.S. Registration No. 4,419,522 for VIRGIN AMERICA for "Online retail store services featuring apparel, accessories, fragrances, watches, jewelry, sunglasses, electronics, cases for electronic products, gift cards, toys, model airplanes, liquor, cosmetics, luggage, bags, pet products, furniture, cookware, coffee makers, golf equipment, wall art, key rings;"

6)    U.S. Registration No. 5,105,553 for VIRGIN for "Operation of fitness centers; providing health club services" and "Health spa services, namely, providing massage, facial and body treatment services, cosmetic body care services;"

In addition, VEL owns numerous registrations and applications for loyalty program services, similar to those offered by the Virginic Club, including:

7)    U.S. Registration No. 4,398,320 for VIRGIN for "providing cash and other rebates for credit card use as part of a customer loyalty program; loyalty program payment processing services;" among other goods and services;

8)    U.S. Registration No. 4,416,519 for VIRGIN (stylized) for "providing cash and

other rebates for credit card use as part of a customer loyalty program; loyalty program payment processing services;" among other goods and services;

9)   U.S. Registration No. 5,273,637 for VIRGIN RED for "Computer software, namely, an application for commercial services, namely, conducting and facilitating e-commerce transactions, collecting, developing and disseminating product information, and developing and disseminating special offerings;" "Consumer loyalty services for commercial, promotional, and advertising purposes, namely, the administration of an incentive program that allows consumers to earn points or awards to redeem for prizes in the fields of entertainment, lifestyle, food and drink, and travel;" "Platform as a service (paas) featuring computer software platforms for commerce services, namely, conducting and facilitating e-commerce transactions, collecting, developing, and disseminating product information, and developing and disseminating special offerings;"

10)  U.S. Application Serial No. 87/620,716 for VIRGIN for "administration of a customer loyalty program which provides special guest services, amenities and awards for members; customer loyalty services and customer club services, for commercial, promotional and/or advertising purposes;" among other goods and services;

11)  U.S. Application Serial No. 87/620,721 for VIRGIN Logo for "administration of a customer loyalty program which provides special guest services, amenities and awards for members; customer loyalty services and customer club services, for commercial, promotional and/or advertising purposes;" among other goods and services;

12)  U.S. Application Serial No. 87/641,469 for VIRGIN for "loyalty card services, namely, providing incentive award programs for customers and employees through the distribution of loyalty rewards cards for the purposes of promoting and rewarding loyalty; organization, operation and management of loyalty and incentive schemes in the nature of award programs for customers and employees through the distribution of loyalty rewards cards;" among other goods and services;

13)  U.S. Registration No. 5,548,974 for VIRGIN and Design for "loyalty card services, namely, providing incentive award programs for customers and employees through the distribution of loyalty rewards cards for the purposes of promoting and rewarding loyalty; organization, operation and management of loyalty and incentive schemes in the nature of award programs for customers and employees through the distribution of loyalty rewards cards;" among other goods and services;

14)  U.S. Registration No. 5,559,279 for VIRGIN HYPERSPEED for "loyalty card services, namely, providing incentive award programs for customers and

employees through the distribution of loyalty rewards cards for the purposes of promoting and rewarding loyalty; organization, operation and management of loyalty and incentive schemes in the nature of award programs for customers and employees through the distribution of loyalty rewards cards;" among other goods and services; and

15) U.S. Registration No. 5,198,041 for VIRGIN AMERICA and Design for "administration of a customer loyalty program which allows members to redeem miles for free or discounted air travel, or for points or awards for the purpose of promoting loyalty;" among other goods and services.

33.     True and correct copies of current status and title reports from the USPTO's Trademark Status and Document Retrieval ("TSDR") system for the registrations and applications listed above are attached hereto as Exhibit A.

34.     Pursuant to 15 U.S.C. § 1057(b), VEL's federal registrations are prima facie evidence of the validity of its VIRGIN Marks as well as VEL's ownership and exclusive right to use its VIRGIN Marks in connection with the goods and services identified in the registration certificates. Moreover, several of the federal registrations for the VIRGIN Marks listed above are incontestable under 15 U.S.C. § 1065. VEL's incontestable registrations are conclusive evidence of the validity of the mark listed in the registrations, VEL's ownership of the mark, and VEL's exclusive right to use the mark in commerce in connection with the identified goods and services. 15 U.S.C. § 1115(b).

35.     In addition to its U.S. trademark registrations for the above-identified VIRGIN Marks, VEL is the owner of the following pending United States trademark applications, which were legally and validly filed with the USPTO:

1) U.S. Application Serial No. 87/620,716 for VIRGIN for, among other services: "Spa services, namely, providing facial, hair, skin and body treatments, manicure and pedicure services, massage services, body waxing services and beauty salon services;"

2) U.S. Application Serial No. 87/620,721 for VIRGIN (stylized) for, among other services: "Spa services, namely, providing facial, hair, skin and body treatments,

manicure and pedicure services, massage services, body waxing services and beauty salon services;" and,

3) U.S. Application Serial No. 87/620,781 for VIRGIN LIVING for, among other services: "Spa services, namely, providing facial, hair, skin and body treatments, manicure and pedicure services, massage services, body waxing services and beauty salon services."

36.     True and correct copies from the USPTO showing details of these applications are attached hereto as Exhibit B.

37.     Defendants had constructive notice of VEL's ownership of federally-registered rights to the VIRGIN Marks under 15 U.S.C. § 1072, at least as early as September 1974.

38.     In addition, VEL has a significant presence on the Internet, owning over 6,000 Internet domain names incorporating its VIRGIN Mark. The primary domain name, www.virgin.com, has been registered since September 10, 1997 and serves as a disbursement point for information on the various VIRGIN-branded businesses, goods, and services. VEL's use of the VIRGIN Marks on the Internet and in its domain names reinforces the importance of the VIRGIN brand to VEL and strengthens the consuming public's recognition of the VIRGIN brand.

39.     VEL uses its VIRGIN Marks in advertising and marketing materials on a nationwide and worldwide basis through various media, including but not limited to, newspapers, direct mail, websites, and trade magazines. VEL has invested a substantial amount of time and money in advertising and promoting its goods and services under the VIRGIN Marks, spending millions of dollars in marketing efforts to promote the VIRGIN brand in the United States. This investment has translated into VIRGIN being a famous brand.

40.     As a result of the substantial use of the VIRGIN Marks and extensive advertising and promotion of goods and services under VEL's VIRGIN Marks, and through favorable consumer acceptance and recognition, the VIRGIN Marks are exceedingly strong, and the

consuming public and the trade widely recognize the VIRGIN Marks as identifying VEL as the source of the premier goods and services offered in connection with VEL's VIRGIN Marks. The VIRGIN Marks symbolize an exceptional level of quality, reliability, and trustworthiness.

41.     Indeed, in 2003, the United States Court of Appeals for the Second Circuit held that VIRGIN is a famous trademark entitled to a broad scope of protection in the United States. *Virgin Enterprises, Ltd. V. Nawab et al.*, 335 F.3d 141,149 (2nd Cir. 2003). Accordingly, VEL's VIRGIN Marks are famous, having become so long prior to the Defendants' acts complained of herein, and are assets of incalculable value as an identifier of VEL, its premier goods and services, and the goodwill associated therewith.

## DEFENDANTS AND THEIR INFRINGING ACTIVITY

42.     On June 1 and June 30, 2017, respectively, Defendant Maciejewicz formed the companies Virginic LLC and Virginic Labs in Wyoming. These entities have the same address, and certain corporate documents filed with the State of Wyoming for these entities were filed on the same date and signed by Maciejewicz as "manager." Exhibit C. Moreover, Maciejewicz previously listed herself as the "Chief Strategist" for Virginic LLC on her personal LinkedIn page, and currently lists herself as "Chief Believer" for the company. Exhibit D. No other individuals, aside from registered agents, are identified in the corporate filings for these companies.

43.     On August 16, 2017, Maciejewicz formed Virginic Poland. According to publicly available corporate filings, Maciejewicz is the sole member and sole shareholder for Virginic PL Sp. z o.o. Exhibit E. In an email to VEL's UK counsel dated June 27, 2019, Virginic LLC confirmed that Virginic Poland is "a production/manufacturing plant" that has produced consumer products for Virginic LLC.

44.      On May 20, 2019, after the UK High Court had entered judgment against Virginic LLC, Maciejewicz formed Paramount in Wyoming. In particular, as discussed in more detail below, the UK Judgment against Virginic LLC was entered on March 22, 2019, Virginic LLC's deadline to satisfy the monetary judgment and pay VEL was April 15, 2019 (Virginic also filed an application to vary the order on this date, which was rejected), and the UK High Court of Appeal rejected Virginic LLC's appeal application on June 13, 2019. Thus, Maciejewicz formed Paramount with full knowledge of the UK Judgment and award of costs entered against Virginic LLC, and in anticipation of the imminent rejection of Virginic LLC's appeal application. As a result, Paramount is a sham entity that was created solely to hide assets from the UK Judgment and continue the acts of infringement by Maciejewicz and the other Defendants in the US and globally. Indeed, Paramount is registered to the same address (Wyoming Mail Forwarding) as Virginic LLC and Virginic Labs and has the same registered agent. Moreover, Maciejewicz previously listed herself as the founder of Paramount on her personal LinkedIn page, and currently lists herself as "Chief Strategist" for Paramount, the same title she gave herself for Virginic LLC. Exhibit D. Moreover, although ownership information for Paramount is not currently available from public Wyoming corporate filings, according to public US Customs and Border Protection bill of lading records, Paramount has imported products with packaging featuring the VIRGINIC mark, and the bill of lading records feature the phrase "PARAMOUNT LABS C/O VIRGINIC" in the mark description section.

45.      Maciejewicz, by and through the Corporate Defendants, without authority, consent, right or license, and in violation of VEL's registered trademark rights, has and continues to advertise, market, sell, offer for sale, and/or manufacture cosmetics and other personal care

products under the mark VIRGINIC, which fully incorporates and is confusingly similar to VEL's famous and registered VIRGIN Marks and name.

46.     In particular, Defendants advertise, market, sell, offer for sale, and/or manufacture cosmetics and other personal care products under the mark VIRGINIC at www.virginic.com (the "Virginic Website") and www.amazon.com, provide certification services for the same goods under the same mark VIRGINIC (see www.certifiedvirginic.org; the "Certified Virginic Website"), and provide related promotional services under the mark VIRGINIC at www.virginic.club (the "Virginic Club Website"). The Virginic Website, Certified Virginic Website, and Virginic Club Website are collectively referred to as the "Virginic Websites." Representative printouts from the Virginic Websites are attached as Exhibit F.

47.     Defendants sell a variety of essential oils, facial care products (e.g., powders, serums, creams), deodorants, and other personal care/beauty related products at its Virginic Website, as well as on Amazon. At the Certified Virginic Website, Defendants promote a "certification" standard for healthy consumer products. Specifically, Defendants use the identical mark VIRGINIC to "certify" that their products sold under the VIRGINIC mark meet certain levels of quality, including that the products are chemical free, vegan, and responsibly sourced. Defendants also offer promotional services under the VIRGINIC name and in connection with these products at the Virginic Club Website, where customers can sign up for promotional email advertising to receive exclusive loyalty coupons for VIRGINIC products.

48.     Defendants also maintain active social media profiles on Facebook (www.facebook.com/VirginicLifestyle/), Pinterest (www.pinterest.co.uk/virginic0121/), Instagram (www.instagram.com/virginic_com/), Twitter (www.twitter.com/Virginic_com), and LinkedIn (www.linkedin.com/company/virginic/) to advertise its products sold under the

VIRGINIC name (the "Virginic Social Media Pages"). The Virginic Websites and Virginic Social Media Pages prominently feature the VIRGINIC mark, which incorporates and is confusingly similar to VEL's VIRGIN Marks, in connection with goods and services identical to those covered by VEL's registrations.

49.     VEL never authorized, licensed, or otherwise permitted Defendants to use the VIRGIN Marks, or any confusingly similar variation thereof, in connection with its goods or services.

50.     In addition, Defendants' use of VIRGINIC as a certification mark, including at the Certified Virginic Website is improper. A trademark cannot be used as both a trademark for products and as a certification mark for the same products. In fact, the Lanham Act expressly provides for cancellation of a certification mark registration if, at any time, the registrant "engages in the production or marketing of any goods or services to which the certification mark is applied." Lanham Act § 14(5), 15 U.S.C. § 1064(5)(B).

## UK OPPOSITION AND HIGH COURT JUDGMENT

51.     On January 17, 2018, Defendants filed a UK trademark application in the name of Virginic LLC for the mark VIRGINIC (UK App. No. 3283156) (the "UK Application") seeking registration in connection with "Cosmetic creams and lotions; Cosmetic creams for skin care; Cosmetics; Cosmetics in the form of oils; Essential oils for cosmetic purposes; Body butter; Dentifrices." *See* Exhibit G. The UK Application was published on February 9, 2018.

52.     On March 5, 2018, VEL sent a letter to Defendant Virginic LLC's UK counsel regarding the UK Application. The letter outlined VEL's strong registered rights in the VIRGIN Marks, and VEL demanded, *inter alia*, that Defendants cease all use of the VIRGINIC mark and abandon the UK Application. Defendants did not substantively respond to VEL's March 5 letter

by May 8, 2018, the deadline to file an opposition with the UK Intellectual Property Office ("UKIPO").

53.     On May 8, 2018, VEL filed an opposition with the UKIPO against the UK Application based on VEL's prior EU and UK trademark registrations for the VIRGIN Mark in Class 3 (the "UK Opposition"). Both parties filed written submissions. On appeal, both parties appeared before the UK High Court (the High Court of Justice, Business and Property Courts of England and Wales, Chancery Appeals), and the UK High Court rejected Virginic LLC's arguments, upheld VEL's UK Opposition and refused the UK Application. In particular, by Judgment handed down on March 22, 2019, Mr. Justice Arnold of the UK High Court held that VEL's VIRGIN Mark has a "high degree of inherent distinctive character"; there is a "high degree of conceptual similarity" between VEL's VIRGIN Mark and the Defendants' VIRGINIC mark; the parties' goods are identical; and there is a likelihood of confusion between the parties' marks. Exhibit H.

54.     In finding the marks to be confusingly similar, the UK High Court Judgment stated:

> [T]he average consumer would perceive -IC to be playing its usual role as a suffix, and hence would perceive VIRGINIC as a newly-minted adjective meaning 'of or pertaining to VIRGIN'. It follows that there is a fairly high degree of conceptual similarity between the trade marks.
>
> *Id.*

55.     On March 26, 2019, the High Court sealed an Order dated March 22, 2019, which ordered Virginic LLC to pay VEL's costs of the appeal and the UK Opposition assessed at £25,000, to be paid before 4:00pm on April 15, 2019. Exhibit I. According to documents filed by Virginic LLC, the company has two bank accounts with Bank of America in California under the names of "Virginic Beauty" and "Virginic Contractors."

56.     On the day that the payment of £25,000 was due, Virginic LLC claimed that it could not pay the money judgment order because it did not have adequate funds, and it filed an application to vary the order so that payment only would become due if Virginic LLC lost the case after appeal to the UK Court of Appeal. However, the UK Court of Appeal refused Virginic LLC's application for permission to appeal, and by an order dated June 13, 2019, the UK High Court rejected the application to vary. In rejecting the application to vary the order, the High Court ordered Virginic LLC to pay the £25,000 already awarded plus interest on those costs at a rate of 8% per year, accruing daily, and an additional £10,000 to compensate VEL for its costs in defending Virginic LLC's application to vary the order. Exhibit I. This additional £10,000 was to be paid by July 11, 2019. Virginic LLC's failure to pay the £10,000 by the July 11, 2019 deadline entitles VEL to claim interest on those costs at a rate of 8% per year, accruing daily. *Id.*

57.     In June and July 2019, VEL's UK counsel followed up with Virginic LLC via email, as they had always done, on multiple occasions regarding payment of the judgment and also to reach a global resolution on this matter. However, Virginic LLC disinstructed the firm of UK representatives that it used for the UK High Court case and refused to correspond with VEL or VEL's UK counsel via email. Instead, Virginic LLC insisted that they send all correspondence via traditional mail to the address at Wyoming Mail Forwarding.

58.     On June 21, 2019, VEL's UK counsel informed Virginic LLC via email that VEL intended to commence infringement proceedings against Virginic LLC, "along with at least Virginic PL and Virginic Labs LLC," as well as Maciejewicz in her individual capacity. In a response email dated June 27, 2019, Virginic LLC confirmed that Virginic Poland is "a production/manufacturing plant" that has produced products for Virginic LLC, and it did not deny a connection between it and the other Virginic Defendants or Maciejewicz.

59.     After multiple follow-ups by VEL's UK counsel regarding payment of the UK Judgment, Virginic LLC responded on July 1, 2019 and claimed that it was "unable to pay £35,475.89 [to satisfy the UK Judgment] as the company has no assets, no savings and no credit or borrowing abilities […]."

60.     Neither Virginic LLC nor any of the other Defendants have paid VEL any portion of the total £35,000 judgment (plus interest), and Virginic LLC and its director(s)/controlling person(s) remain in contempt of the UK Judgment.

## US OPPOSITION

61.     On February 14, 2018, Virginic LLC filed a U.S. trademark application for the mark VIRGINIC (Serial No. 87/797,552) (the "US Application") seeking registration in connection with "Cosmetics; Essential oils; [and] Dentifrices" in International Class 3. The US Application claims a date of first use of December 9, 2017. The US Application was published for opposition on July 3, 2018.

62.     On July 20, 2018, VEL, through US counsel, sent a letter to Virginic LLC's US counsel regarding the US Application and the UK Opposition. The letter outlined VEL's strong registered rights in the VIRGIN Marks, and VEL demanded, *inter alia,* that Defendants cease all use of the VIRGINIC mark and abandon the US Application. Counsel for Virginic LLC responded on July 25, 2018, and Virginic refused to withdraw the US Application or cease use of VIRGINIC. The parties exchanged additional letters on August 8 and 17, 2018, but Defendants continued to refuse to cease use of VIRGINIC or abandon the US Application.

63.     Accordingly, on December 21, 2018, VEL filed a Notice of Opposition (the "US Opposition") against the US Application for the VIRGINIC mark alleging a likelihood of confusion under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), and a likelihood of dilution

by blurring under Section 43(c) of the Lanham Act, 15. U.S.C. § 1125(c). Defendant Virginic LLC filed an answer and counterclaim on January 30, 2019, and VEL filed its answer to the counterclaims on September 4, 2019. No discovery has been taken by either party in the US Opposition and it is still in the pre-trial stages.

### THE HARM AND DAMAGES CAUSED BY DEFENDANTS' ACTIONS

64.     Defendants' VIRGINIC mark incorporates Virgin's famous VIRGIN Mark in its entirety. Indeed, Defendants merely append the suffix "IC," to the end of Virgin's VIRGIN Mark. As such, the commercial use of the VIRGINIC mark in connection with the cosmetics/personal care goods set forth in the US Application and shown at the Virginic Website, the certification services at the Certified Virginic Website, and the promotional services at the Virginic Club Website and the Virginic Social Media Pages is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Virgin or as to the origin, sponsorship, or approval of Defendants' goods and services by Virgin.

65.     Defendants had constructive notice of VEL's ownership of the VIRGIN Mark dating back to 1974. Moreover, Defendants were provided actual notice of VEL's U.S. trademark rights at least as early as July 20, 2018.

66.     Defendants' continued conduct as complained of herein causes damage and irreparable injury to VEL and to its goodwill and business reputation. As a direct and proximate result of Defendants' acts, VEL has suffered, and will continue to suffer, irreparable harm, damages, and economic injury.

67.     VEL has no adequate remedy at law, and Defendants have proven that unless they are restrained and enjoined by the Court, they will continue to engage in their infringing conduct as described herein, causing damage and irreparable injury to VEL, including damage to its

goodwill and business reputation. VEL cannot ascertain the precise amount of its damages at this time.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114(1)

68.     VEL repeats and realleges the allegations of Paragraphs 1 through 67 above as though fully set forth herein.

69.     Defendants' unauthorized and infringing use of the VIRGIN Marks, as alleged herein, is likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval of Defendants' goods and services by VEL. The consuming public and the trade are likely to believe that Defendants' goods and services originate with VEL, are licensed, sponsored, or approved by VEL, or are in some way connected with or are related to VEL, when they are not, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

70.     Defendants' unauthorized and infringing uses of the VIRGIN Marks, as alleged herein, constitutes intentional and willful infringement of VEL's rights in and to its federally-registered VIRGIN Marks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

71.     Further, on information and belief, even if Paramount does not use the VIRGINIC mark itself, Paramount is a contributory infringer because Paramount manufactures and/or imports the infringing products, and/or is an alter ego of the other Defendants.

72.     These infringing acts have occurred in interstate and/or United States commerce and have caused and will continue to cause, unless restrained by this Court, serious and irreparable injury to VEL, for which VEL has no adequate remedy at law.

## COUNT II
## FEDERAL UNFAIR COMPETITION
### 15 U.S.C. § 1125(a)

73.    VEL repeats and realleges the allegations of paragraphs 1 through 72, as though fully set forth herein.

74.    Defendants' unauthorized use of the VIRGIN Marks, as alleged herein, constitutes use of a false designation of origin and false or misleading representation in interstate commerce, which wrongly and falsely designates, describes and represents the origin of Defendants' goods and services as originating from or being connected with VEL, and is likely to cause confusion, or to cause mistake, or to deceive as to Defendants' affiliation, connection, or association with VEL, or as to the origin, sponsorship, or approval of Defendants' goods and services by VEL, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

75.    In addition, Defendants' acts of using VIRGINIC as both a trademark for goods and a certification mark is improper under the law, and causes additional confusion as to the source of Defendants' products.

76.    These acts have occurred in interstate and/or United States commerce and have caused and will continue to cause, unless restrained by this Court, serious and irreparable injury to VEL, for which VEL has no adequate remedy at law.

## COUNT III
## FEDERAL TRADEMARK DILUTION
### 15 U.S.C. § 1125(c)

77.    VEL repeats and realleges the allegations of paragraphs 1 through 76, as though fully set forth herein.

78.    As a result of the duration, extent, and geographic reach of VEL's use of the VIRGIN Marks, including in the State of Wyoming and this District, as well as advertising and

publicity associated with the VIRGIN Marks, the VIRGIN Marks have achieved an extensive degree of distinctiveness and are famous trademarks. The VIRGIN Marks are widely recognized by the general consuming public as a designation of source for VEL's services. Defendants began using VIRGINIC in interstate and/or United States commerce after the VIRGIN Marks became famous and distinctive.

79.     Because of the similarity of the marks, Defendants' commercial use of VIRGINIC is likely to cause dilution by blurring, by creating a likelihood of association with VEL's famous VIRGIN Marks. Defendants' commercial use is likely to impair the distinctiveness of VEL's famous VIRGIN Marks, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

80.     These acts have caused and will continue to cause, unless restrained by this Court, serious and irreparable injury to VEL, for which VEL has no adequate remedy at law.

**COUNT IV**
**FAILURE TO FUNCTION AS A TRADEMARK**
**15 U.S.C. 1052, 15 U.S.C. 1054 & 15 U.S.C. 1127**

81.     VEL repeats and realleges the allegations of paragraphs 1 through 80, as though fully set forth herein.

82.     The VIRGINIC mark is not a valid trademark and is not entitled to registration because it is being used both as a product mark and as a certification mark.

83.     In order to function as a trademark, as that term is defined in the Lanham Act, a word, name or symbol must identify and distinguish the owner's goods from those manufactured or sold by others and must also clearly indicate the source of those goods.

84.     Defendants are currently using the VIRGINIC mark both as a trademark for its own products, *see* www.virginic.com, and as a certification mark for others' products, *see* www.certifiedvirginic.com.

85.    As a result of this improper dual use of the VIRGINIC mark as both a product mark and a certification mark, the VIRGINIC mark does not, and cannot, distinguish Defendants' products from those that Defendants certify as VIRGINIC products. For this reason, Defendants' VIRGINIC mark does not, and cannot, function as a trademark.

86.    Because VIRGINIC cannot function as a trademark, VEL seeks an order requiring Virginic LLC to abandon the U.S. Application.

### COUNT V
### WYOMING TRADEMARK DILUTION
### WY Stat. § 40-1-115 (2017)

87.    VEL repeats and realleges the allegations of paragraphs 1 through 86, as though fully set forth herein.

88.    VEL is the exclusive owner of the VIRGIN Marks.

89.    As a result of the duration, extent, and geographic reach of VEL's use of the VIRGIN Marks, including within Wyoming commerce, as well as advertising and publicity associated with the VIRGIN Marks, the VIRGIN Marks have achieved an extensive degree of distinctiveness and are famous trademarks in the state of Wyoming. The VIRGIN Marks are widely recognized by the consuming public as a designation of source for VEL's services.

90.    Long after the VIRGIN Marks became famous, Defendants, without authorization from VEL, began using VIRGINIC in interstate and/or United States commerce. Defendants' use of the VIRGIN Marks dilutes and/or is likely to dilute, by blurring, the distinctive quality of those marks and to lessen the capacity of such marks to identify and distinguish VEL's services, and has caused a likelihood of harm to VEL's business reputation, in violation of Section 40-1-115 of the 2017 Wyoming Trademarks and Service Marks statutes.

91.     These acts have caused and will continue to cause, unless restrained by this Court, serious and irreparable injury to VEL, for which VEL has no adequate remedy at law.

## COUNT VI
## TRADEMARK INFRINGEMENT UNDER WYOMING COMMON LAW

92.     VEL repeats and realleges the allegations of paragraphs 1 through 91, as though fully set forth herein.

93.     By the acts described above, Defendants have engaged in trademark infringement in violation of the common law of the State of Wyoming.

94.     These acts have caused and will continue to cause, unless restrained by this Court, serious and irreparable injury to VEL, for which VEL has no adequate remedy at law.

## COUNT VII
## UNFAIR COMPETITION UNDER WYOMING COMMON LAW

95.     VEL repeats and realleges the allegations of paragraphs 1 through 94, as though fully set forth herein.

96.     As a result of the actions complained of herein, Defendants have misappropriated valuable property rights of VEL, have passed off their goods and services as those of VEL, are trading on the goodwill symbolized by VEL's trademark rights as alleged herein, and those acts are likely to cause confusion or mistake, or to deceive members of the consuming public and the trade. Said acts constitute unfair competition in violation of the common law of the State of Wyoming.

97.     These acts have caused and will continue to cause, unless restrained by this Court, serious and irreparable injury to VEL, for which VEL has no adequate remedy at law.

## COUNT VIII
## DOMESTICATION/RECOGNITION OF UK JUDGMENT UNDER WYOMING COMMON LAW

98.     VEL repeats and realleges the allegations of paragraphs 1 through 97, as though fully set forth herein.

99.     On March 26 and June 13, 2019, VEL obtained the UK Judgment, a final money judgment order, against Virginic LLC relating to the UK Opposition. See true and correct copies of the orders attached hereto as Exhibit I.

100.    The UK Judgment is final and unappealable, and is otherwise enforceable in the UK.

101.    The UK Judgment was rendered under a judicial system that provides impartial tribunals and procedures compatible with due process of law. Virginic LLC not only had an opportunity to argue its case, but in fact appeared and submitted multiple rounds of arguments and evidence before the UKIPO and on appeal before the UK High Court of Justice. Thus, Virginic LLC was afforded due process of law.

102.    Virginic LLC is a Wyoming company.

103.    Accordingly, the UK Judgment is entitled to full recognition in the courts of the United States on principles of comity and Wyoming common law, and VEL requests that the Court domesticate and recognize the UK Judgment so that VEL can enforce it against Virginic LLC in Wyoming, its state of incorporation.

## PRAYER FOR RELIEF

WHEREFORE, VEL prays that this Court enter a judgment and order:

1.      That Defendants have violated Sections 32(1), 43(a), and 43(c) of the Lanham Act;

2.      That Defendants committed acts of trademark dilution in violation of WY Stat. §

40–1–115 (2017);

    3.      That Defendants committed acts of unfair competition and trademark infringement in violation of Wyoming common law;

    4.      That Defendants, their officers, directors, agents, servants, employees, affiliates, successors, shareholders, assigns, and attorneys, as well as all those in active concert or participation with them, be preliminarily and permanently enjoined and restrained from:

        a.      Using the VIRGIN Marks or any mark confusingly similar thereto, including but not limited to the mark VIRGINIC;

        b.      Using any name, mark, or domain name that wholly incorporates the VIRGIN Marks or is confusingly similar thereto, including but not limited to any reproduction, counterfeit, copy, or a colorable imitation of the VIRGIN Marks;

        c.      Registering, transferring, selling, owning, or exercising control over any domain name that incorporates, in whole or in part, the VIRGIN Marks or is confusingly similar to the VIRGIN Marks;

        d.      Doing any other act or thing calculated or likely to induce or cause confusion or the mistaken belief that Defendant(s) is/are in any way affiliated, connected, or associated with VEL or its goods or services;

        e.      Licensing or authorizing others to use VIRGINIC, the VIRGIN Marks, or any confusingly similar title, name, or mark;

        f.      Injuring VEL's business reputation and the goodwill associated with VEL's VIRGIN Marks, and from otherwise unfairly competing with VEL in any manner whatsoever;

        g.      Passing off Defendants' goods and services as those of VEL; and,

        h.      Committing any acts which will blur, tarnish or dilute, or are likely to blur, tarnish or dilute the distinctive quality of the famous VIRGIN Marks.

    5.      That, pursuant to 15 U.S.C. §1118, Defendants be required to deliver up all products, labels, signs, packages, wrappers, advertisements, websites, social media sites, promotions, and all other matter in the custody or under the control of Defendants or their officers, directors, agents, servants, employees, affiliates, successors, shareholders, assigns, and attorneys,

as well as all those in active concert or participation with them, that bear the VIRGINIC mark or the VIRGIN Marks or any other mark that is likely to be confused with the VIRGIN Marks (collectively, the "VIRGINIC Materials"), and either (1) destroy all VIRGINIC Materials and certify to such destruction; or (2) at VEL's election, rebrand and/or resticker the VIRGINIC Products so that the VIRGINIC mark thereon is not visible, and donate the rebranded/restickered VIRGINIC Products to charity;

6.      That Defendants be ordered to transfer to VEL ownership of the domain names www.virginic.com, www.certifiedvirginic.org, and www.virginic.club, and the Virginic Social Media Pages, and any other domain name or social media account incorporating, in whole or in part the VIRGIN Marks, and owned or under the control of Defendants or their officers, directors, agents, servants, employees, affiliates, successors, shareholders, assigns, attorneys, or those in active concert or participation with them, and otherwise disable access to the domains and social media accounts prior to any transfer.

7.      That, because of Defendants' willful actions and pursuant to 15 U.S.C. § 1117, VEL be awarded monetary relief and damages in an amount to be fixed by the Court in its discretion as just, including:

    a.      All profits received by Defendants from sales and revenues of any kind made as a result of its actions from the date of actual notice;

    b.      All damages sustained by VEL as a result of Defendants' actions from the date of actual notice; and

    c.      The costs of the action.

8.      That pursuant to 15 U.S.C. § 1116, Defendant be directed to file with the Court and serve on VEL within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the

injunction;

9.      That because of the exceptional nature of this case resulting from Defendant's deliberate and willful infringing actions, this Court award to VEL all reasonable attorneys' fees, costs, and disbursements incurred by it as a result of this action from the date of actual notice, pursuant to 15 U.S.C. § 1117(a), (b), and (d);

10.     That the Court order Virginic LLC to expressly abandon U.S. Trademark Application No. 87/797,552 for VIRGINIC, pursuant to its jurisdictional authority over Virginic LLC and 15 U.S.C. § 1119.

11.     That the Court pierce the veil of the Corporate Defendants and find that Ms. Maciejewicz is personally liable for the acts and ommissions of the Corporate Defendants, pursuant to the factors articulated in WY Stat. § 17–29–304.

12.     That the UK Judgment attached hereto be recognized and domesticated for purposes of enforcement in the US and that the Court enter a monetary judgment in favor of VEL and against Virginic LLC in the amount of £35,000 pursuant to the UK Judgment, which amount should be ordered to be paid in United States dollars pursuant to the exchange rate existing as of either the date of the UK Judgment, or as of the date that this Court enters judgment, whichever amount is greater, together with interest thereon as provided in the UK Judgment; and

13.     This Court grant VEL such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff VEL demands a trial by jury on all issues that may be so tried.

Dated this 24th day of October, 2019.

Respectfully submitted,

By: _____

Timothy L. Woznick [WY Bar # 6-3949]
CROWLEY FLECK PLLP
237 Storey Blvd., Ste. 110
Cheyenne, WY  82009
Telephone: (307) 426-4100
Facsimile: (307) 426-4099
twoznick@crowleyfleck.com

Joseph V. Norvell
(Pro Hac Vice to be submitted)
Tom Monagan
(Pro Hac Vice to be submitted)
Christian S. Morgan
(Pro Hac Vice to be submitted)
NORVELL IP LLC
1776 Ash Street
Northfield, Illinois 60093
Telephone: (888) 315-0732
Facsimile: (312) 268-5063
courts@norvellip.com