**FILED**

9:20 am, 4/10/20

**Margaret Botkins
Clerk of Court**



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

---

VIRGIN ENTERPRISES LIMITED,

      Plaintiff,

vs.

    Case No.  19-CV-0220-F

VIRGINIC LLC, *et al.*,

      Defendants.

---

ORDER ON PLAINTIFF'S MOTION (DOC. 30) TO STRIKE SEVERAL
AFFIRMATIVE DEFENSES OF DEFENDANT VIRGINIC LLC

---

Pursuant to Federal Rule of Civil Procedure 12(f), Plaintiff Virgin Enterprises Limited ("Plaintiff") moves to strike the majority of what Defendant Virginic LLC ("Virginic") pleads as affirmative defenses in its answer and counterclaims (doc. 27): nos. 1–4, 6–12, 15, 16, 18, 20, and 23–26.  In response, Virginic withdrew its affirmative defenses nos. 6, 8, 20 and 23.  It otherwise opposes the motion.  Doc. 32.  Plaintiff did not reply.  As follows, the Court grants the motion in part and denies in part.

I.    *Pleading Standards for Defenses and Standards for Rule 12(f) Motions.*

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter."  Fed. R. Civ. P. 12(f).  Plaintiff argues the challenged affirmative defenses are insufficient defenses.

Rule 8 prescribes the rules of pleading. Defenses are subject to three provisions with[in] Rule 8: 1) the defense must be stated "in short and plain

1

terms" (Rule 8(b)(1)(A)); 2) "any avoidance or affirmative defense" must be affirmatively stated (Rule 8(c)(1)); and 3) the defense "must be simple, concise, and direct" (Rule 8(d)(1)).

*Michaud v. Greenberg & Sada, P.C.,* No. 11-CV-01015-RPM-MEH, 2011 WL 2885952, at *2 (D. Colo. July 18, 2011). Thus, "[a]n affirmative defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstance." *Id.* (citing *Unger v. U.S. West, Inc.,* 889 F. Supp. 419 (D. Colo. 1995)). *See also Sinclair Wyo. Refinery Co. v. A&B Builders, Ltd,* No. 15-CV-91-ABJ, 2018 WL 4677793, at *5 (D. Wyo. Jan. 23, 2018), *recon. denied,* 2018 WL 4697067 (D. Wyo. Apr. 3, 2018).

The Tenth Circuit has not ruled whether to change course and instead apply the plausibility standards of *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) to affirmative defenses. Many courts within the Tenth Circuit have declined to do so. *See, e.g., Dorato v. Smith,* 163 F. Supp. 3d 837, 882 (D.N.M. 2015) *Cooper v. City of Alva,* No. CIV-19-148-G, 2019 WL 5653217, at *1, n.1 (W.D. Okla. Oct. 31, 2019); *Michaud*, 2011 WL 2885952.

Given the relatively lenient standards for pleading defenses, motions to strike "are generally disfavored, but within [the] sound discretion of the court. A motion to strike seeks a drastic remedy. … They are rarely granted. … If there is any doubt whether the pleading should be stricken, it should be resolved in favor of the non-moving party." *Sinclair Wyoming,* 2018 WL 4677793, at *5 (citations and internal quotation marks omitted). *See also Michaud,* 2011 WL 2885952, at *2 (applying same standard).

The purpose of Rule 12(f) is to save time and expenses that would be spent litigating issues that will not affect the outcome of the case. *United States v. Shell Oil Co.,* 605 F. Supp. 1064, 1085 (D. Colo. 1985). … Wright and Miller

2

have recognized that motions to strike pleadings under Rule 12(f) should generally be denied[,] * * * often being considered purely cosmetic or "time wasters."

*Hockaday v. Aries Logistics, Inc,* No. 14-CV-260-J, 2015 WL 13752620, at *2 (D. Wyo. Aug. 20, 2015) (citing 5C C. Wright & A. Miller, *Federal Practice & Procedure Civil* § 1382 (3d. ed. 2004)).

## II.    Analysis

### A.    Affirmative Defense No. 1: Failure to State a Claim

Virginic's first affirmative defense asserts that the amended complaint fails to state a claim for relief.  Plaintiff takes issue with this defense because it is not actually an affirmative defense but rather a defense that should be presented in a motion to dismiss, not an answer.  Although this is an ordinary, general denial and not one of the defenses that Rule 8(c) requires to be pled affirmatively, pleadings in this district frequently state it as a defense or affirmative defense.  "Although some courts will strike denials or other theories that have been mislabeled as affirmative defenses, the Court concludes the better practice is not [to] do so unless the moving party demonstrates prejudice."  *Fed. Trade Comm'n v. Affiliate Strategies, Inc.,* No. 09-4104-JAR, 2010 WL 11470103, at *7 (D. Kan. June 8, 2010) (footnote omitted).  Plaintiff does not identify how having this general denial pled as an affirmative defense would add breadth to discovery or otherwise prejudice Plaintiff. The Court declines to strike the first affirmative defense.

### B.    Affirmative Defense No. 2: Fair, Nominative or Descriptive Use

Virginic's second affirmative defense asserts the "doctrines of fair use, nominative fair use, and/or descriptive use."  Plaintiff argues:

> The fair use defense "permits the use of a name or term, other than as a trademark, that is descriptive and is used fairly and in good faith only to describe the goods." *Beer Nuts, Inc. v. Clover Club Foods Co.,* 711 F.2d 934, 937 (10th Cir. 1983) (emphasis in original). However, this defense is "not available if the alleged descriptive use is in fact a trademark use." *Id.* A "trademark use" is use of a term "to identify the source of [a producer's] goods to the public and to distinguish those goods from others." *Id.* at 938; *see also Sara Lee Corp. v. Sycamore Family Bakery Inc.,* 2:09CV523DAK, 2009 WL 3617564, at *4 (D. Utah Oct. 27, 2009). Here, there is no genuine dispute that Virginic uses the VIRGINIC Mark as a trademark, and not "fairly and in good faith only to describe the goods."

Doc. 30. In response, Virginic argues "Plaintiff's contentions with regard to this defense get into the merits of the case" and "[t]here have been allegations raised in the pleadings that the Virginic mark was used in ways beyond the trademark." Doc. 32.

The federal rules permit pleading inconsistently in the alternative. This applies not only to claims but also to defenses. Fed. R. Civ. P. 8(d)(3). Giving reasonable inferences to Virginic, it appears to plead in the alternative that "Virginic" is lawful as a trademark and if it is not, then its use of the word is lawful because it is merely descriptive. Plaintiff does not cite any examples of a court determining the substantive issues raised by its argument on a Rule 12(f) motion. *Beer Nuts* was on appeal after a bench trial; *Sara Lee* ruled on a motion for preliminary injunction. The issues raised by these doctrines are not appropriate for resolving on a motion to strike in this case. The Court declines to strike this defense.

### C.      *Affirmative Defense No. 3: Innocent Infringement*

The third affirmative defense asserts innocent infringement. Plaintiff argues:

> It is well-settled that trademark infringement is a strict liability offense, and the "innocent infringer" defense is unrelated to liability and instead goes to reducing an award of statutory damages (if at all). *See, e.g., Taubman Co. v.*

*Webfeats*, 319 F.3d 770, 775 (6th Cir. 2003) ("[T]he Lanham Act is a strict liability statute."); *Spin Master Ltd. v. Alan Yuan's Store,* 325 F. Supp. 3d 413, 421 (S.D.N.Y. 2018) ("Because the Lanham Act is a strict liability statute, a registrant need not prove knowledge or intent in order to establish liability."); *Live Face on Web, LLC v. Natchez Bd. of Realtors, Inc.,* 5:17-CV-122-DCB-MTP, 2018 WL 1247880, at *3 (S.D. Miss. Mar. 9, 2018) ("The affirmative defense of innocent infringement cannot succeed under any set of facts because it is not, in fact, an affirmative defense to infringement liability."). Thus, Virginic's "innocent infringer" defense is not an affirmative defense and there is no set of circumstances in which Virginic's Third Affirmative Defense would bar Virgin's claims.

Doc. 30.  In response, Virginic argues in relevant part

The question of innocent infringement goes to the relief that Plaintiff is seeking. Plaintiff requests relief under 15 U.S.C. § 1117 including all of Virginic's profits, Plaintiff's damages, costs of the action, and attorney's fees. See First Amended Complaint, [Doc. No. 19] prayer for relief, ¶¶ 7 & 9.  Plaintiff also asserts a claim under Wyo. Stat. Ann. § 40-1-115. First Amended Complaint, Count V.

Doc. 32.  Of the cases that Plaintiff cites, only *Live Face* struck an innocent infringer affirmative defense on a Rule 12(f) motion.  It did so because it deemed this was not an affirmative defense to copyright infringement liability, as it only went to statutory damages.  *Live Face* also found that as an ordinary defense, innocent infringement was irrelevant because the plaintiff sought only actual damages.

There is little consensus among the circuits on whether innocent infringement is an affirmative defense.  *See, e.g., K. Hansotia & Co. Inc. v. Einalem LLC,* No. 0:19-CV-60191-UU, 2019 WL 7708241, at *3 (S.D. Fla. May 13, 2019).  A sister court within this circuit assumes innocent infringement is an affirmative defense to copyright infringement. *See, e.g., Home Design Servs., Inc. v. Starwood Const., Inc.,* 801 F. Supp. 2d 1111, 1120 (D. Colo. 2011); *Home Design Servs., Inc. v. Trumble,* No. 09-CV-00964-WYD-CBS,

2011 WL 843900, at *2 (D. Colo. Mar. 8, 2011) ("Given that a cautious pleader will often label an argument as an affirmative defense, there is no reason to strike such a denial where the other side is not prejudiced by any redundancy.").

Here, Plaintiff recognizes in its motion that the "innocent infringer" defense applies to statutory damages for trademark infringement. *See also Spin Master Ltd. v. Alan Yuan's Store,* 325 F. Supp. 3d 413, 425, n.4 (S.D.N.Y. 2018) (noting trademark law has adopted a multi-factor analysis from copyright law for determining statutory damages). That a defense only goes to damages does not appear to disqualify it from being an affirmative defense. The Tenth Circuit, for instance, recognizes failure to mitigate damages as an affirmative defense, despite it being a defense only as to damages. *See, e.g., F.D.I.C. v. Oldenburg,* 38 F.3d 1119, 1121–22 (10th Cir. 1994). In addition, unlike *Live Face,* Plaintiff does not specify whether it seeks only actual damages and not statutory damages. The Court declines to strike this defense.[1]

> D. *Affirmative Defense No. 4: Trademark Misuse and Unclean Hands, Including Antitrust Violations*

Virginic's fourth affirmative defense asserts "doctrines of trademark misuse and unclean hands, including Plaintiff's use of its purported trademarks as instruments of, or in aid of, violations of the antitrust laws." Plaintiff does not seek to strike the trademark misuse and unclean hands defense generally, but only the antitrust portion of this defense.

---

[1] Virginic also argues that the innocent infringer defense is allowed pursuant to 15 U.S.C. § 1114(2), where "an infringer or violator is engaged solely in the business of printing the mark or violating matter for others and establishes that he or she was an innocent infringer or innocent violator." In that circumstance, the owner of the mark is only entitled to an injunction. But Virginic does not appear to assert in its pleading or brief that it was solely printing the Virginic mark or violating matter for others. This argument is not persuasive.

At the outset, the Court notes the antitrust defense to trademark infringement is largely recognized as more theoretical than actual. It is a defense to the exclusive right to use an "incontestable mark," if "the mark has been or is being used to violate the antitrust laws of the United States." 15 U.S.C. § 1115(b)(7). But according to *McCarthy on Trademarks and Unfair Competition,*

> in no final reported decision involving trademark infringement has a court actually refused to enforce a trademark because it was used in violation of antitrust law. Similarly, in private litigation, the courts have refused to invoke the sanction of forfeiture of a trademark as a remedy for an antitrust violation.

6 *McCarthy on Trademarks and Unfair Competition* § 31:91 (5th ed.) (notes omitted). *See also* 1 *Antitrust Adviser* § 6:12, Trademark Misuse (5th ed.) ("in almost every reported instance where the antitrust misuse of a trademark has been raised as a defense, it has been rejected"); *Clorox Co. v. Sterling Winthrop, Inc.,* 117 F.3d 50, 56–57 (2d Cir. 1997) (citing *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 298 F. Supp. 1309, 1314 (S.D.N.Y. 1969), *aff'd in relevant part,* 433 F.2d 686 (2d Cir. 1970)).

Here, Plaintiff argues two theories for striking the antitrust defense. First, Plaintiff asserts that Virginic lacks standing for such a defense, citing the above section of *McCarthy on Trademarks and Unfair Competition*. The treatise notes that "where the party allegedly infringing a mark is not a licensee and has not been injured by trademark license restrictions allegedly in violation of the antitrust laws, then that party has no standing to assert an antitrust misuse defense," citing *Central Ben. Mut. Ins. Co. v. Blue Cross & Blue Shield Ass'n,* 711 F. Supp. 1423, 1434 (S.D. Ohio 1989), *aff'd*, 1992 U.S. App. LEXIS 34838 (6th Cir. Dec. 29, 1992).

However, in *Central Benefits* the alleged antitrust violation was in the trademark holder's requirements for licensees. The party asserting the defense in that case was not a licensee, so it lacked standing to raise this as a defense. Here, Virginic states its antitrust defense generically. Its response brief argues that Plaintiff's conduct in violation of antitrust law "includes" civil litigation and trademark proceedings (U.S. and U.K.). Virginic concludes "[t]he Plaintiff's actions are much larger than simply a single lawsuit and, in the aggregate, show a pattern of commercial abuse against Virginic that rises to the level of antitrust activity." Doc. 32. Thus, the issue here is not a lack of standing – Virginic alleges it has suffered harm from at least Plaintiff's resort to legal protections for its trademarks.

The primary issue with Virginic's antitrust defense is that although Virginic argues it encompasses a "larger pattern" of commercial abuse, the only conduct Virginic actually identifies is Plaintiff's civil litigation and trademark proceedings. Under the *Noerr-Pennington* doctrine, resort to legal protections is immune from antitrust liability unless it is a sham, *i.e.,* "objectively baseless." *Cardtoons, L.C. v. Major League Baseball Players Ass'n,* 208 F.3d 885, 889–90 (10th Cir. 2000); *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961); *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965). Plaintiff argues the Court can and should determine now that its claims are not objectively baseless. Plaintiff cites *1-800Contacts, Inc. v. Mem'l Eye, P.A.,* 2:08-CV-983 TS, 2010 WL 988524, at *1 (D. Utah Mar. 15, 2010) as striking antitrust-based affirmative defenses because the trademark infringement claim was not objectively baseless.

As *1-800Contacts* concisely states,

> The *Noerr–Pennington* Doctrine is based on both the Sherman Act and the right to petition the government. "In recognition of this right, the United States Supreme Court has held that ... organizations are immune from liability under antitrust laws for actions constituting petitions to the government." The Doctrine, therefore, "immunizes from antitrust liability bona fide lobbying and litigation efforts." However, if the litigation is a "sham" there is no immunity. "[L]itigation cannot be deprived of immunity as a sham unless the litigation is objectively baseless." If the litigation is not objectively baseless, it can not be a "sham" regardless of the subjective intent. "To ascertain baselessness, a court must consider whether the litigant had 'probable cause to initiate the legal action.'"

2010 WL 988524, at *2 (notes omitted).

Plaintiff argues that it brought this action to protect its trademark rights in its VIRGIN Marks. Although Virginic's counterclaims seek to preclude Plaintiff from retaining and enforcing Plaintiff's trademark rights on personal products in the United States, Virginic does not dispute that when Plaintiff filed the complaint (and to the present day), Plaintiff owned the U.S. trademark rights in the VIRGIN marks alleged. Virginic disputes that it is liable on any of Plaintiff's claims, but it does not dispute that it is involved in the conduct that Plaintiff alleges is infringing and otherwise unlawful. The Court also recently denied the motion to dismiss Plaintiff's claims brought by two of the other Defendants. Plaintiff's action against Virginic is not objectively baseless.

In its response, Virginic argues it needs unspecified discovery to show Plaintiff's action is objectively baseless. Virginic does not attempt to explain why discovery would be necessary on this issue. Based on Plaintiff's undisputed allegations noted above, there is no discovery that could show Plaintiff's litigation and trademark proceedings were objectively baseless. In short, the antitrust defense fails as to Plaintiff's action in this Court.

Plaintiff did not specifically address why its *United Kingdom* litigation or the trademark proceedings in both countries were not shams. However, Plaintiff alleges (in both its original and amended complaints) that it won in opposing Virginic's U.K. trademark application and in the U.K. litigation that followed the administrative decision. Plaintiff further alleges that it has filed an opposition to Virginic's U.S. trademark application, which remains pending. The only other trademark proceedings alleged by either Plaintiff or Virginic are the proceedings in which it registered the VIRGIN trademarks at issue on cosmetics and other personal products. In its counterclaims, Virginic asserts Plaintiff abandoned these marks and committed fraud on the U.S. Patent & Trademark Office ("PTO"). But Virginic does not attempt to explain in either its answer or its response brief how Plaintiff's conduct before either the U.K. trademark office or the PTO with respect to the trademarks at issue was objectively baseless, such that any of those proceedings also violated antitrust law. For this reason, the antitrust defense fails regarding the U.K. litigation and the U.K. and U.S. trademark proceedings as well.[2]

As for allegedly anticompetitive conduct outside of Plaintiff's petitioning activity, Virginic argues that it needs discovery on this issue before the Court should rule on the antitrust defense. If Virginic had brought an antitrust counterclaim, this would not be a sufficient explanation to survive a motion to dismiss under *Twombly.* However, this being an affirmative defense, Virginic was not required to plead facts in support. As the Court notes above, the Tenth Circuit has not yet ruled whether affirmative defenses should be

---

[2] Neither side cites any authority that the *Noerr-Pennington* doctrine would not apply to Plaintiff's petitioning activity outside of the United States.

subject to the same plausibility standard as *Twombly* and *Iqbal* require for claims.  All that is generally required for a defense to survive a motion to strike is that it could succeed in some circumstance.

Here, the antitrust defense could succeed in *some* theoretical circumstance of direct, competitive harm to Virginic involving the marks at issue but outside of petitioning activity – of which it is purportedly unaware without discovery from Plaintiff.  The defense is supported by existing law, albeit slim.

> Since denial of a plaintiff's exclusive right to the use of his trademark is not essential to the restoration of competition, it is not enough merely to prove that merchandise bearing a trademark, however valuable the trademark, has been used in furtherance of antitrust violations. If this is all that were required, any antitrust violation in the distribution of such merchandise would result in a forfeiture of the trademark with a consequent unnecessary frustration of the policy underlying trademark enforcement. An essential element of the antitrust misuse defense in a trademark case is proof that the mark itself has been the basic and fundamental vehicle required and used to accomplish the violation.
>
> *Although the burden of establishing such a direct misuse is a heavy one, it is not insuperable.* For instance, in *Phi Delta Theta Fraternity v. J. A. Buchroeder & Co.,* 251 F. Supp. 968 (W.D. Mo. 1966), it was claimed that after a conspiracy between fraternities and others to monopolize the market in fraternity jewelry had failed, and the conspiracy could not be enforced against independent jewelry manufacturers and dealers, the fraternities began to register their insignia as trademarks for the very purpose of eliminating independent competition, and the court quite properly and understandably concluded that, if these allegations were proven, the trademarks were used as a causal instrumentality to violate the antitrust laws.

*Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena,* 298 F. Supp. 1309, 1315 (S.D.N.Y. 1969), *modified on other grounds sub nom. Carl Zeiss Stiftung v. VEB Carl Zeiss Jena,* 433 F.2d 686 (2d Cir. 1970) (emphasis added).  It bears noting that *Zeiss* found on summary judgment that the antitrust defense failed on the evidence.  *Id.*

Courts that have struck the antitrust defense in trademark cases have generally done so because the alleged anticompetitive conduct did not directly use the mark as the vehicle for competitive harm. *See, e.g.,* 6 *McCarthy on Trademarks and Unfair Competition* § 31:91, n.6; *Microsoft Corp. v. Sales Int'l LLC,* No. 1:06-CV-1672-ODE, 2007 WL 9702354, at *8 (N.D. Ga. Jan. 23, 2007). In cases that decline to strike the defense, it appears the defendant generally either pled facts in support (at least to identify what sort of antitrust violation it was alleging) or presented evidence in opposing the motion to strike. For instance, in *Estee Lauder, Inc. v. Fragrance Counter, Inc.,* 189 F.R.D. 269 (S.D.N.Y. 1999), the court declined to strike an antitrust defense because the defendant "provided evidence to support allegations that Plaintiffs have attempted—independently of this lawsuit—to block TFC's participation in the sale of Plaintiffs' products. While the evidence provided is, at best, inconclusive, it suggests the possibility that Plaintiffs are directly attempting to misuse their trademarks for anticompetitive purposes." *Id.* at 273. The court found these were questions to decide only after discovery and on the merits.

Here, Virginic's argument in support of its antitrust defense is just as generic as its pleading. Despite the defense being limited to only direct use of the marks at issue to competitively and directly harm Virginic (*see, e.g., Zeiss*;), Virginic did not present any evidence of anticompetitive conduct. It did not even suggest what kind of anticompetitive conduct Plaintiff has allegedly engaged in with the marks at issue. Virginic just says Plaintiff has engaged in a larger pattern of commercial abuse against Virginic, and it needs discovery to determine whether any of it violates the antitrust laws. This is the merest of threads on which to hang an assertion of antitrust violations, even if pled as a defense.

[I]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery … but quite another to forget that proceeding to antitrust discovery can be expensive. As we indicated over 20 years ago in *Associated Gen. Contractors of Cal., Inc. v. Carpenters,* 459 U.S. 519, 528, n. 17, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983), *"a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."*

* * *

It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through "careful case management," *post,* at 1975, given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side.

*Twombly,* 550 U.S. at 558-59 (emphasis added).

Particularly in the context of a trademark infringement case, there is little or no reason to require an antitrust *counterclaim* to be factually plausible, but allow an antitrust *defense* to proceed without identifying any facts – or even what kind of antitrust violation is alleged. The distinction between counterclaims and affirmative defenses is not always clear. *See, e.g., Adidas Am., Inc. v. Payless Shoesource, Inc.,* 529 F. Supp. 2d 1215, 1260 (D. Or. 2007), *recon. denied*, 540 F. Supp. 2d 1176 (D. Or. 2008) (antitrust raised as both affirmative defense and counterclaim in trademark infringement case; because the defenses and counterclaims were based on the same factual and legal arguments, the court found both failed for lack of pleading the elements of the antitrust statute asserted). As Rule 8(c) recognizes, if a party "mistakenly designates" a counterclaim as a defense, "the court must, if justice requires, treat the pleading as though it were correctly designated." Fed. R. Civ. P. 8(c)(2).[3]

---

[3] Neither party asserts that Virginic mistakenly pled antitrust as a defense instead of a counterclaim. The Court relies on Rule 8(c)(2) only as analogous support here.

There appears to be a paucity of analysis regarding the appropriate pleading standard for the antitrust defense to trademark infringement. Courts within the Tenth Circuit that decline to extend *Twombly* to affirmative defenses do not appear to address that question with respect to an antitrust defense. The Court has also found no reported cases directly on point outside this circuit. Two cases lend some support for requiring the antitrust defense to trademark infringement to be plausible. In *Rayette-Faberge, Inc v. Riverton Labs., Inc.,* No. 66 CIV. 2133, 1968 WL 8434, 160 U.S.P.Q. 221 (S.D.N.Y. Dec. 4, 1968), the court noted:

> On August 8, 1968, in what may well have been an excessive concern to avoid substantial determinations rested upon mere pleading errors, I denied plaintiff's motion to dismiss a counterclaim and to strike a defense assertedly grounded in the antitrust laws. * * *
> *While the answer itself could have been thought to expose this [factual] deficiency on its face, it is now convincingly demonstrated that the antitrust "defense" lacks any suggestion … that the trademark on which plaintiff sues "has been or is being used to violate the antitrust laws * * *."* 15 U.S.C. § 1115(b)(7). … [D]efendants attempt in this defense to assert vague, conclusory charges of antitrust misbehavior by the plaintiff. Pressed to make these charges more concrete, defendants have been forced to reveal that they have no basis for charging [it].

*Id.* at *1 (emphasis added).

In *Critter Control, Inc. v. Young,* No. 3:13-0695, 2014 WL 4411666, at *12 (M.D. Tenn. Sept. 8, 2014), *rec. adopted in relevant part,* 2014 WL 4960948 (M.D. Tenn. Sept. 30, 2014), the court reasoned that a trademark owner was entitled to summary judgment on its trademark claim, despite the defendant "rais[ing] the specter of an antitrust defense."

> *The Defendant has not set out a viable antitrust defense,* let alone supported such a defense with evidence that the Plaintiff has used its protected mark for improper antitrust purposes. In essence, all the Defendant has asserted is that the Plaintiff has vigorously sought to protect its rights in its protected

mark. However, the good faith enforcement by the plaintiff of its trademark rights does not constitute an antitrust violation or a trademark misuse. See *Alberto–Culver Co. v. Andrea Dumon, Inc.,* 466 F.2d 705, 711 (7th Cir. 1972).

*Critter Control,* 2014 WL 4411666 at *12 (emphasis added).

In light of (a) the narrowness of the antitrust defense to trademark infringement, (b) its high potential to embroil the parties in greatly broadened discovery, and (c) there being no logical reason to allow a party to avoid all plausibility requirements simply by denominating this as a defense instead of a counterclaim – the Court concludes the antitrust defense to trademark infringement must be plausible before it can proceed to discovery.[4] In both its answer and its response brief, Virginic's antitrust defense is devoid of fact allegations regarding how Plaintiff has allegedly used its marks at issue outside of petitioning activities in violation of antitrust laws. It does not even suggest what type of anticompetitive conduct is allegedly involved. The antitrust defense is insufficient and is stricken from Virginic's fourth affirmative defense. The remainder of the fourth affirmative defense is not stricken. This ruling does not preclude Virginic from timely moving to amend its answer if it later has factual grounds to assert a plausible antitrust defense or counterclaim.

E.      *Affirmative Defense No. 7: Failure to Join Necessary Parties*

The seventh affirmative defense asserts failure to join necessary parties. Plaintiff argues this is not a defense to trademark infringement, citing *Malibu Media, LLC v. Batz,*

---

[4] The Court does not imply that *Twombly* and *Iqbal's* plausibility standards should otherwise apply to affirmative defenses.

12–CV–01953, 2013 WL 2120412, at *4 (D. Colo. Apr. 5, 2013), *rec. adopted,* 2013 WL 2115236 (D. Colo. May 15, 2013) (striking defense in copyright infringement case). Plaintiff further argues that Rule 19 does not require naming all joint tortfeasors in the same action, citing *Temple v. Synthes Corp., Ltd*., 498 U.S. 5, 7 (1990).

In its response brief, Virginic cites no authorities in support but argues this "defense would include third parties that are necessary to resolve these claims, depending upon what is shown through discovery and development of the evidence in this case. This amounts to contributory negligence, which is a listed affirmative defense under Rule 8." Doc. 32. But Virginic did not plead contributory negligence in this affirmative defense; it pled a failure to join a necessary party. Virginic also points to Plaintiff's other claims and argues failure to join a necessary party is a defense to unfair competition, etc., but this ignores Plaintiff's point that in any kind of tort or tort-like claim, joint tortfeasors are not necessary parties.

Rule 12 recognizes the failure to join a necessary party under Rule 19 ("Required Joinder of Parties) as a defense. Fed. R. Civ. P. 12(b)(7). However, if the defense cannot succeed in any circumstance based on the type of claims, it should be stricken. Here,

> [t]he question of who must be joined as defendants in patent, copyright, and trademark suits for infringement … is fairly easy to answer. A suit for infringement may be analogized to other tort actions; all infringers are jointly and severally liable. Thus, plaintiff may choose whom to sue and is not required to join all infringers in a single action.

*Ohio State Univ. v. Teespring, Inc.,* No. 2:14-CV-397, 2015 WL 13016358, at *2 (S.D. Ohio Apr. 13, 2015) (quoting 7 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 1614 (3d ed. 2001), footnotes omitted). In *Teespring,* a trademark owner sued only the company operating the website that encouraged third-

parties to create and sell t-shirts, some of which the plaintiff alleged were infringing its trademarks. The actual sellers of the infringing goods were not named, and in denying the defendant's motion to dismiss, the court found they were not necessary parties. Several cases find a trademark owner a necessary party in infringement actions, but the Court has seen no reported cases finding another alleged infringer is a necessary party. All of Plaintiff's claims against Virginic are either trademark infringement or tort-like. The seventh affirmative defense would not succeed in any circumstance, and it is therefore stricken. This does not preclude Virginic from filing a motion, after conferral, if it later identifies a non-party whom it believes is a necessary party under Rule 19 consistent with the analysis above.

      *F.     Affirmative Defenses Nos. 9, 11, 12, 15, 16 and 18: Denials or Affirmative Defenses?*

Plaintiff argues these affirmative defenses "are mere denials of Virgin's claims and do not constitute defenses," let alone affirmative defenses. Doc. 30. These defenses assert Virginic "is not jointly or severally liable" (Ninth); Virgin "does not have valid enforceable rights in its purported trademarks" (Eleventh); Virgin "lacks standing required to assert some or all of its claims" (Twelfth); Virginic "is not liable for the conduct of any of its current or former employees or agents … [who] acted outside the scope of their authority" (Fifteenth); Virginic is not liable for the acts of any other third party (Sixteenth); and Virgin's injuries were caused by "intervening causes … unrelated to the alleged conduct" of Virginic (Eighteenth). Plaintiff characterizes these as arguments on the merits of the amended complaint against Virginic that should not be stated as affirmative defenses. In

response, Virginic disagrees and argues these are affirmative defenses because "they raise legal bases for Virginic to avoid liability even if Plaintiff can prove its claims."

The parties' dispute regarding whether these defenses should be pled affirmatively returns to a long-running question that the drafters of Rule 8(c) had hoped to short-circuit.

> Rule 8(c), which according to the Note prepared by the Advisory Committee on Civil Rules was modelled after the then existing English and New York provisions, differs from both the common law and code practice in that it makes no attempt to define the concept of affirmative defense. Rather, it obligates a defendant to plead affirmatively any of the nineteen listed defenses he or she wishes to assert; this is necessary even though some of them were not considered to be pleas by way of confession and avoidance at common law. By this technique, *Rule 8(c) represents a conscious effort by the draftsmen of the federal rules to avoid controversy over the question of what technically constitutes an "affirmative defense"* and at the same time make it clear that certain regularly occurring matters must be set forth affirmatively before they will be considered by the district court to be part of the case.

5 Wright & Miller, *Federal Practice & Procedure Civil* § 1270 (3d ed.) (notes omitted; emphasis added).

Since the adoption of Rule 8(c), courts have at times found its approach unsatisfactory and sought to define what an affirmative defense is, once and for all. Plaintiff cites for instance *United States v. Portillo-Madrid,* 292 F. App'x 746 (10th Cir. 2008). In that case,

> In *Dixon v. United States,* 548 U.S. 1, 8 … (2006), the Supreme Court refers to duress as an affirmative defense and states the common law rule that "the burden of proving affirmative defenses—indeed, all circumstances of justification, excuse or alleviation—rest[s] on the defendant." (internal quotation and alteration omitted). Duress is an affirmative defense, see Black's Law Dictionary (8th ed. 2004) (defining affirmative defense as: "A defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint

are true."), although the cases tend to refer to it alternately as an affirmative defense or simply a defense.

*Id.* at 747 n.1.  But as Rule 8(c)'s approach suggests, the concept remains fluid.

Some courts have defined an affirmative defense as a defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's claim, even if all allegations in the complaint are true.  Other courts have defined an affirmative defense as one that will defeat the plaintiff's claim if it is accepted by the district court or the jury.

*Affiliate Strategies,* 2010 WL 11470103, at *7 (notes omitted).

However, the distinction between ordinary and affirmative defenses is only important in determining whether a defendant waived a defense by not pleading it affirmatively.  The distinction is otherwise unimportant, unless a plaintiff can show prejudice in having other matters pled as though they were affirmative defenses.  Plaintiff cites no authority, and the Court is also not aware of any, that precludes a defendant from affirmatively pleading other matters beyond those that Rule 8(c) requires, so long as it does not run afoul of Rule 8's requirement of simplicity and concision.

Turning to the specific "affirmative defenses" Plaintiff challenges in this group, Virginic does plead denials as affirmative defenses.  This is perhaps inartful and lengthens the answer without adding real substance.  However, Plaintiff does not point to any prejudice it will suffer from these denials being pled as though they were affirmative defenses.  Because the Court does not wish to encourage motions to strike of this type, the Court declines to strike the ninth, eleventh, twelfth, fifteenth, sixteenth and eighteenth affirmative defenses.

### G.    *Affirmative Defenses Nos. 10, 25 and 26: Fair Notice?*

Plaintiff addresses these defenses together as failing to give fair notice.  Virginic's tenth affirmative defense asserts that "Plaintiff seeks relief that is not legally cognizable or otherwise equitable as against Defendant."  The twenty-fifth affirmative defense "incorporates by reference any defenses applicable to [Virginic] that are asserted or to be asserted by any other Defendant to the First Amended Complaint as if fully set forth herein to the extent Defendant may share in such defense."  The twenty-sixth affirmative defense

> reserves and asserts all affirmative and other defenses available under any applicable federal or state law. Defendant presently has insufficient knowledge or information upon which to form a belief as to whether it may have other, as yet unstated, affirmative defenses available. Therefore, Defendant reserve[s] their right to assert additional defenses, counterclaims, crossclaims, and third-party claims in the event that discovery indicates that such additional defenses or claims would be appropriate.

In support of striking these reservation-of-rights as defenses, Plaintiff cites *Lane v. Page,* 272 F.R.D. 581, 601 (D.N.M. 2011) and *Nootbaar v. Alderwoods, Inc.,* CIV-19-110-D, 2019 WL 3558182, at *4 (W.D. Okla. Aug. 5, 2019) ("Rule 15, rather than a reservation of rights, governs Defendant's ability to add defenses through amendment of a pleading."). In response, Virginic argues that it "understands that the Court will set deadlines for amendment of the pleadings. Virginic's intention with these defenses is to indicate its lack of waiver of adding additional affirmative defenses, including ones asserted by other parties. Striking this largely boilerplate language is unnecessary as it causes no prejudice to Plaintiff."

The tenth affirmative defense appears duplicative, and the twenty-fifth and twenty-sixth are not defenses but reservations of rights.  However, the Court declines to strike

them for the same reasons Judge Browning stated in later backing away from his decision

in *Lane* to strike such:

> The Court affirms its conclusion in *Lane v. Page* that "'[a] reservation of unpled defenses is not a defense of any kind, much less an affirmative one.'" 272 F.R.D. at 601 (quoting *Mission Bay Ski & Bike,* 2009 Bankr. LEXIS 2495, at *5, 2009 WL 2913438). It is not. Where a defendant reserves unpled defences yet also agrees to comply with rule 15, however, a motion to strike may be inappropriate. In such a case, the Court cannot conclude that "'under no set of circumstances'" would the reservation of unpled defenses prevail. *Friends of Santa Fe Cty. v. LAC Minerals, Inc.,* 892 F. Supp. at 1343 (citations omitted). At least in the circumstances of this case, where Corizon Health and Dr. Sisneros have agreed to comply with rule 15 and where there are no other alleged defects with the Corizon Answer, the Court will deny a motion to strike a reservation of unpled affirmative defenses.

*Tavasci v. Cambron,* No. CIV 16-0461 JB/LF, 2016 WL 6405896, at *18 (D.N.M. Oct. 25,

2016). Given Virginic's agreement to comply with Rule 15 regarding any new defenses it

wishes to argue, these defenses do not appear to prejudice Plaintiff. The Court does not

wish to encourage motions of this type because "[a] motion to strike a reservation of

defenses does not advance the ball of litigation." *Tanner v. McMurray,* No. CIV 17-0876

JB/KBM, 2019 WL 4740940, at *50–51 (D.N.M. Sept. 27, 2019).

>    H.    *Affirmative Defense No. 24: Improper, Unfair or Inequitable Venue*

Virginic's twenty-fourth affirmative defense asserts improper venue "or there are

circumstances that make the prosecution and defense of this action in this forum unfair,

inequitable, and inappropriate." Plaintiff argues "venue in this District is proper because

the exercise of general personal jurisdiction is appropriate, among other reasons." See 28

U.S.C. § 1391. Virginic responds that "[t]he defense of improper venue must be asserted

in the initial responsive pleading or in a motion to dismiss. Otherwise, it is waived." Doc.

32 (citing *Linde Boc Process Plants LLC v. Boldt Co.,* No. 05-CV-0191-CVE-PJC, 2005 U.S. Dist. LEXIS 54009, at *2-3 (N.D. Okla. July 22, 2005)).

Improper venue is a defense that must be pled in the answer or a motion to dismiss. Fed. R. Civ. P. 12(h)(1). Virginic did not admit Plaintiff's assertion of venue. Doc. 27 Answer ¶ 19. Normally, improper venue is more efficiently raised by a defendant asserting it in a motion to dismiss or motion for judgment on the pleadings. The defense can be waived by conduct. *Thompson v. United States,* 312 F.2d 516, 519 (10th Cir. 1962). It is of such a character that a defendant should not delay in seeking its resolution. *Cf.,* Fed. R. Civ. P. 12(h) 1966 Advisory Committee Note.

The Court is a proper venue under 28 U.S.C. § 1391(b)(3). Plaintiff alleges it has personal jurisdiction over Virginic, Virginic Labs, LLC and Paramount 77 Labs, LLC, and none of those Defendants have moved to dismiss to dispute personal jurisdiction. The alleged conduct is nationwide. Plaintiff alleges the other two defendants (Berenika Maciejewicz and Virginic PL Sp z o.o.) are not residents or citizens of this district, and it is unclear at this point whether Virginic, Virginic Labs and Paramount would all be subject to personal jurisdiction in the district where Ms. Maciejewicz is alleged to maintain at least part-time residency (California), "there is no district in which an action may otherwise be brought as provided in this section" 28 U.S.C. § 1391(b)(3). The improper venue defense therefore cannot succeed in any circumstance, and it is stricken from the twenty-fourth affirmative defense.

Plaintiff does not appear to challenge the remainder of the twenty-fourth affirmative defense, which asserts "circumstances that make the prosecution and defense of this action

in this forum unfair, inequitable, and inappropriate." While it is unnecessary to plead a more convenient forum (28 U.S.C. § 1404) or the other doctrines regarding the forum when foreign defendants are involved as affirmative defenses, Plaintiff shows no prejudice in these being pled as such. This part of the twenty-fourth affirmative defense is not stricken.

*III.* *Conclusion*

Plaintiff's motion (doc. 30) to strike affirmative defenses is GRANTED IN PART and DENIED IN PART consistent with the foregoing.

IT IS SO ORDERED this 10th day of April, 2020.

_____
NANCY D. FREUDENTHAL
UNITED STATES DISTRICT JUDGE